IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 1 8 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| FORTIS INSURANCE LTD., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C.A. NO. H-02-1226 |
| | § | |
| BROWNING-FERRIS INDUSTRIES, INC., | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

# DEFENDANT'S MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

David J. Beck
State Bar No. 00000070
Federal I.D. No. 919
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720
Attorney-in-Charge for Defendant
Browning-Ferris Industries, Inc.

OF COUNSEL:

BECK, REDDEN & SECREST, L.L.P.
   David W. Jones
   State Bar No. 00790980
   Fed. I.D. No. 18206
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720

#-7

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

STATEMENT OF THE ISSUES...................................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................................... 5

ARGUMENT AND AUTHORITIES............................................................................... 6

    A.    The Court Lacks Subject Matter Jurisdiction ....................................................... 6

        1.    There is No Jurisdiction Under the FSIA ..................................................6

        2.    The London Property Insurers Have Not Alleged and Cannot Allege Facts Sufficient to Establish Diversity Jurisdiction .........................7

    B.    The Court Should Abstain from Entertaining the London Property Insurers' Declaratory Judgment Claim ................................................. 9

        1.    There is a Pending State Action in Which All Matters in Controversy May be Fully Litigated ........................................10

        2.    The London Property Insurers Filed Suit in Anticipation of BFI's Suit in Arizona............................................................................11

        3.    The London Property Insurers Engaged in Forum Shopping ...................11

        4.    It is Inequitable to Allow the London Property Insurers to Change Forums .........................................................................................13

        5.    Arizona is a More Convenient Forum for the Parties and Witnesses........15

        6.    Retaining this Lawsuit Will Not Serve the Purposes of Judicial Economy .................................................................................15

CONCLUSION...............................................................................................................16

## TABLE OF AUTHORITIES

**Page**

**Cases**

*909 Corp. v. Village of Bolingbrook Police Pension Fund,*
  741 F. Supp. 1290 (S.D. Tex. 1990) ................................................................................14

*Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770 (5th Cir. 1986)....................................................6

*Amerada Petrol. Corp.* v. *Marshall*, 381 F.2d 661 (5th Cir. 1967)...............................................13

*American Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.,*
  52 S.W.3d 337 (Tex. App.—Dallas 2001, pet. filed) ................................................. 12-13

*Brillhart v. Excess Ins. Co. of Am.*, 62 S. Ct. 1173 (1942) ...........................................................10

*Certain Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39 (6th Cir. 1994)............................8

*Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir. 1991) ........................................13

*E.R. Squibb & Sons v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998) .............................8

*EEOT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.,*
  257 F.3d 992 (9th Cir. 2001) ....................................................................................................7

*Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254 (5th Cir. 1988)..................................9

*Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992) .............................................10

*Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. 1981) ..................................................10

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) .............................................................9

*In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656 (S.D.N.Y. 1997) ........................................1

*Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998) ..................................................8

*John Deere Ins. Co. v. Smith Lighterage Co.*, 948 F. Supp. 947 (W.D. Wash. 1996) .................13

*Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F. Supp.2d 1218 (N.D. Cal. 2001) ........................8

*McAuslin v. Grinnell Corp.*, No. Civ.A.97-775, 2000 WL 1059850 (E.D. La. 2000) ...................8

*Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983) ...................... 11, 13-14

*Mobil Corp. v. Abeille Gen. Ins. Co.*,
    Civ. A. No. H-89-3877, 1990 WL 504828 (S.D. Tex. Nov. 6, 1990) ................................7

*Murphy Oil USA, Inc. v. Unites States Fidelity & Guar. Co.*,
    No. 91-1157, 1992 WL 465701 (W.D. Ark. Dec. 21, 1992) ...............................................7

*National Union Fire Ins. Co. v. Freeport-McMoRAN, Inc.*, 767 F. Supp. 568 (D. Del. 1991).....13

*Powell v. Abney*, 83 F.R.D. 482 (S.D. Tex. 1979)..........................................................................9

*Rowan Cos., Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989) .............................................................10

*Service Corp., Int'l v. Loewen Group, Inc.*,
    1997-1 Trade Cas. (CCH) ¶ 71,688, 1996 WL 756808  (S.D. Tex.  Nov. 29 1996)... 13-14

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995) ..................................13

*Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir. 1991)..............................................................9

*State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D. N.C. 1988)...................................13

*Torch, Inc. v. LeBlanc*, 947 F.2d 193 (5th Cir. 1991).....................................................................10

*Travelers Indem. Co. v. Waffle House*,
    No. 3:97-CV-1239-H, 1997 WL 560773 (N.D. Tex. Aug. 29, 1997) ...............................13

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*,
    996 F.2d 774 (5th Cir. 1993) .........................................................................................10

## **Statutes**

28 U.S.C. § 1332.................................................................................................................... 5-7

28 U.S.C. § 1603.................................................................................................................. 4, 6-7

28 U.S.C. § 2201..................................................................................................................4, 10

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant Browning-Ferris Industries, Inc. ("BFI") moves the Court to dismiss the sole claim alleged in the Complaint filed by plaintiffs Fortis Insurance Ltd., *et al.* (the "London Property Insurers").   In support thereof, BFI respectfully shows as follows:

## NATURE AND STAGE OF THE PROCEEDINGS

From the mid-1970's until the early 1990's, BFI purchased numerous insurance policies from certain Underwriters at Lloyd's of London[1] and certain London market insurance companies.[2]   The London Property Insurers, together with numerous other London market insurance companies, including Lexington Insurance Co. ("Lexington"), sold various property insurance policies to BFI covering the period 1976 through 1994.

In 1998, while it was based in Houston, BFI and several of its subsidiaries filed suit against various London market insurers, including the London Property Insurers, in the District Court of Harris County seeking coverage under both liability and property policies for personal injuries and property damage arising out of various sites in North America.   Thereafter, before the London Property Insurers filed an answer in the state court action, BFI and the London Property Insurers agreed to attempt to resolve their differences through discussions outside of litigation.   Accordingly, BFI non-suited its claims against the London Property Insurers, and the

---

[1]Lloyd's is not an insurance company.  Rather, it is an insurance market regulated by the Society and Corporation of Lloyd's where individual underwriting members (or "Names") underwrite insurance through groups called "Syndicates," which are annual business ventures. *See In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 661 (S.D.N.Y. 1997).

[2]An insurance policy obtained through the London insurance market is different from a typical liability or property policy obtained from an American insurance company.  In a typical American policy, a single insurance company will agree to insure an entire risk.  In a London policy, however, multiple insurance companies and Syndicates of Underwriters at Lloyd's will agree to insure specified percentages of the risk.

parties entered into a Standstill Agreement effective November 20, 1998. (*See* Ex. 1.)[3] The Standstill Agreement provided that it could be terminated by either party upon 30 days notice:

> BFI and the LONDON FIRST-PARTY INSURERS, for themselves and their successors and assigns, each separately agrees that any party hereto may terminate this AGREEMENT for any reason by giving written notice as provided herein that it wishes to terminate the AGREEMENT. This AGREEMENT shall terminate at 3:00 p.m. Eastern Time on the thirtieth (30th) calendar date following the date of the written notice.

(*Id.*)

Contemporaneously with its discussions with the London Property Insurers, BFI was engaged in discussions with Lexington concerning coverage for environmental property damage under a separate property policy issued solely by Lexington. Unfortunately, those discussions stalled. Thus, on December 6, 2001, BFI (together with various subsidiaries) filed suit against Lexington. Because BFI was then based in Scottsdale, Arizona,[4] the suit was filed in the Superior Court of Maricopa County, Arizona. (*See* Ex. 2.)

On January 3, 2002, counsel for BFI received a letter from counsel for Lexington stating that Lexington was terminating its participation in the Standstill Agreement and that "[u]pon the expiration of the 30-day period set forth in the Agreement, Lexington intends to seek a declaration in [the Superior Court of Maricopa County] that the [London] policies it participated in . . . do not provide coverage for BFI's environmental liabilities." (*See* Ex. 3.)

Five days later, on January 8, 2002, counsel for BFI received a letter from counsel for the London Property Insurers stating that they no longer represented Lexington and that:

---

[3]The Standstill Agreement contains confidentiality provisions limiting disclosure. Accordingly, BFI attaches only those provisions relevant to this motion.

[4]In 1999, BFI was acquired by and became a subsidiary of Allied Waste Industries, Inc. in Scottsdale, Arizona.

.

> the London first-party insurers that we do represent have every
> intention of continuing to pursue the investigation of BFI's first-
> party claims that is currently on-going. . . .  We see no reason why
> Lexington's decision should change the on-going investigation by
> the London first-party insurers we represent, and we plan to
> proceed accordingly.

(*See* Ex. 4.)

On January 18, 2002, Lexington filed its answer in the Superior Court of Maricopa

County.  (*See* Ex. 5.)  Thereafter, notwithstanding the statement in the January 3 letter from its

counsel, Lexington did not amend its pleadings to seek a declaration of no coverage under the

London property policies.  Thus, on February 27, 2001, counsel for BFI telephoned counsel for

Lexington to inform him that BFI intended to terminate the Standstill Agreement and amend the

complaint in the Arizona case to add the property policies issued by the London Property

Insurers and Lexington.  During that conversation, BFI asked for and received Lexington's

consent to the filing of the amended complaint.

Later that day, counsel for BFI sent a letter to counsel for the London Property Insurers

giving written notice of BFI's termination of the Standstill Agreement.  Specifically, counsel for

BFI stated:

> BFI hereby gives written notice of its termination of the
> Agreement.  The Agreement shall terminate at 3:00 p.m. Eastern
> Time on the thirtieth calendar day following the date of this letter
> at which time BFI intends to join Certain London Insurers in Cause
> No. CV2001-021047, styled *Browning-Ferris Indus., Inc. v.*
> *Lexington Insurance Company*, in the Superior Court of Maricopa
> County, Arizona.

> The Arizona action was initiated by BFI to obtain coverage under an
> "all risk" insurance policy written by Lexington Insurance Company
> for the period 1975-76.   As you know, Lexington Insurance
> Company previously expressed its intent to join in that action several
> first-party property insurance placements issued by Certain
> London Insurers.  We would like to resolve all of BFI's first-party
> issues in one forum.

(Ex. 6.)

True to its word, shortly after 3:00 p.m. e.s.t. (1:00 p.m. m.s.t.) on Friday, March 29, 2002, BFI (together with various subsidiaries) filed an amended complaint in the Superior Court of Maricopa County.   In the amended complaint, BFI and its subsidiaries added the London property policies; joined the London Property Insurers as defendants; identified sites at which insured property damage has occurred; and asserted claims for, *inter alia*, money damages arising from the London Property Insurers' breach of contract and claims handling practices. (*See* Ex. 7.)   Significantly, the amended complaint was filed with the consent of Lexington, one of the insurers that subscribed to the London policies at issue.   (*See* Ex. 8.)[5]

At or about the time that BFI and its subsidiaries were filing their amended complaint in Arizona, the London Property Insurers (unbeknownst to BFI) were initiating the present action by filing their Complaint in this Court.   In their Complaint, the London Property Insurers named only BFI as a defendant and sought merely a declaration of no coverage under the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201, for unspecified claims by unspecified insureds at unspecified sites.

On April 9, 2002, eleven days after they filed the present action, the same London Property Insurers filed an appearance in the Superior Court of Maricopa County.   (*See* Ex. 10.) Immediately thereafter, plaintiff Icarom, P.L.C. ("Icarom") removed the case to the U.S. District Court for the District of Arizona claiming (incorrectly) that it is an "instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603, *et seq*.   (*See* Ex. 11.)   Thus, as a result of the London Property Insurers' procedural wrangling,

---

[5]BFI and Lexington agreed on the form of the stipulation to file the amended complaint during the 30-day notice period.   (*See* Ex. 9.)

there are currently two proceedings involving coverage under the same policies pending in two separate district courts:  (1) the action brought by BFI and its subsidiaries seeking affirmative relief which is now pending in the District of Arizona (the "Arizona Action"), and (2) the present action under the FDJA filed by the London Property Insurers in anticipation of BFI's suit.

## STATEMENT OF THE ISSUES

1.  Whether the London Property Insurers have established the existence of subject matter jurisdiction.

2.  Whether the Court should decline to hear the London Property Insurers' claim under the FDJA and dismiss this case in favor of the Arizona Action.

## SUMMARY OF THE ARGUMENT

This lawsuit is a classic preemptive strike.  It was initiated by the London Property Insurers with full knowledge that they were going to be sued by BFI in the Superior Court of Maricopa County.  Desperate to extract themselves from the state court forum selected by BFI and its subsidiaries (the natural plaintiffs), the London Property Insurers have attempted to open up a second litigation front.  The London Property Insurers' procedural maneuver, however, suffers from a fatal flaw:  the lack of subject matter jurisdiction.

In their Complaint, the London Property Insurers attempt to meet their burden of establishing subject matter jurisdiction by alleging that:

> This Court has jurisdiction over this action on two independent grounds: (i) pursuant to 28 U.S.C. § 1332(a)(4), because the action is between a foreign state and a U.S. citizen; and (ii) pursuant to 28 U.S.C. § 1332(a)(2), because the action is between citizens of a foreign state and a U.S. citizen, each with in excess of $75,000 in controversy, exclusive of interest and costs.

(Complaint, ¶ 28.)  The London Property Insurers are wrong on both points.  As discussed below, this action does not involve a "foreign state."  Moreover, the London Property Insurers

have not shown and cannot show that there is complete diversity. Accordingly, there is no basis to find subject matter jurisdiction.

Moreover, even if the Court were to conclude that it does have subject matter jurisdiction, the Court should nevertheless defer to the Arizona Action and decline to entertain the London Property Insurers' declaratory judgment claim. Under well-established federal precedent, this dispute should be resolved in Arizona, the forum selected by the proper plaintiffs.

## ARGUMENT AND AUTHORITIES

### A.     The Court Lacks Subject Matter Jurisdiction

As the parties seeking to invoke the jurisdiction of this Court, the burden is on the London Property Insurers to plead and prove a basis for subject matter jurisdiction. *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986). They cannot do so.

### 1.     There is No Jurisdiction Under the FSIA

The London Property Insurers contend that jurisdiction exists under 28 U.S.C. § 1332(a)(4), which provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . a foreign state, defined in [the FSIA], as plaintiff and citizens of a State or of different States.

The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." *Id.* at § 1603(a). The FSIA further defines "instrumentality of a foreign state" to include:

> any entity –
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof

*Id.* at § 1603(b).

The London Property Insurers attempt to bring themselves within the reach of the FSIA by alleging that that "[p]laintiff Icarom, P.L.C. is an instrumentality of a foreign state." (Complaint, ¶ 26.)  The London Property Insurers' allegation notwithstanding, however, at least two courts – *including the U.S. District Court for the Southern District of Texas* – have held that Icarom is **not** an "instrumentality of a foreign state."  *See Murphy Oil USA, Inc. v. Unites States Fidelity & Guar. Co.*, No. 91-1157, 1992 WL 465701, at *7 (W.D. Ark. Dec. 21, 1992); *Mobil Corp. v. Abeille Gen. Ins. Co.*, Civ. A. No. H-89-3877, 1990 WL 504828, at *2-3 (S.D. Tex. Nov. 6, 1990).  Accordingly, the London Property Insurers have not carried and cannot carry their burden of establishing jurisdiction under the FSIA.[6]

> 2.   The London Property Insurers Have Not Alleged and Cannot
>       Allege Facts Sufficient to Establish Diversity Jurisdiction

Recognizing that they cannot rely upon Icarom to bootstrap themselves into federal court, the London Property Insurers make a half-hearted attempt to allege diversity jurisdiction. Specifically, they allege:

> All of the London Market Company Plaintiffs (except British Reserve Insurance Co. Ltd., Compagnie Europeene D'Assurances Industrielles, S.A., and London & Edinburgh Ins. Co., Ltd.) have subscribed portions of one or more of the London Policies totaling

---

[6]Recently, the Ninth Circuit rejected Icarom's argument that it qualifies as an "instrumentality of a foreign state" because the majority of its shares are held by Ireland through a separate holding company.  *See EEOT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 997 (9th Cir. 2001).  However, notwithstanding the fact that both the insurer defendants and the insured argued in favor of jurisdiction, the court remanded the case "to determine whether Icarom is an organ of Ireland," noting that there were conflicting facts on the issue.  *Id.* at 998-99.  Following the remand, the parties settled the case before the district court could address the question posed by the Ninth Circuit.  That settlement, which came after more than eleven years of litigation, occurred less than a month ago.  (*See* Ex. 12.)

in excess of $75,000.   As to these London Market Company
Plaintiffs, the matter in controversy exceeds $75,000.

(Complaint, ¶ 27.)  They then go on to allege:

This court has jurisdiction over this action . . . because the action is
between citizens of a foreign state and a U.S. citizen, each with in
excess of $75,000 in controversy, exclusive or interests and costs.

(*Id.*, ¶ 28).

Conveniently missing from their jurisdictional allegations, however, is any reference to

plaintiffs Certain Underwriters at Lloyds, London (i.e., the "Names" who subscribed to the BFI

policies at issue (*see, supra*, note 1)).  The London Property Insurers fail to do mention these

plaintiffs because, unlike the London market insurance companies that subscribed to BFI's

policies, the Names are not all "citizens of a foreign state."  Indeed, as the London Property

Insurers concede in their Complaint, many of these Names are "citizens of various foreign states

and *of various U.S. States*."  (Complaint, ¶ 24 (emphasis added).)

The majority of federal courts that have addressed diversity jurisdiction in cases

involving Names – including at least one district court in the Fifth Circuit – have held that to

support diversity jurisdiction, each and every Name must be diverse and each and every Name

must satisfy the minimum amount in controversy requirement.  *See, e.g., E.R. Squibb & Sons v.

Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998); *Indiana Gas Co. v. Home Ins. Co.*,

141 F.3d 314, 319 (7th Cir. 1998); *Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F. Supp.2d

1218, 1223 (N.D. Cal. 2001); *McAuslin v. Grinnell Corp.*, No. Civ.A.97-775, 2000 WL

1059850, at *4 (E.D. La. 2000); *but see Certain Underwriters at Lloyd's, London v. Layne*, 26

F.3d 39 (6th Cir. 1994).  Thus, in order to establish diversity jurisdiction, the London Property

Insurers were required to allege (and prove) that no Name who subscribed to the BFI policies is a

resident of Arizona or Delaware. (*See* Complaint, ¶ 25 (alleging that BFI is a Delaware corporation with its principal place of business in Arizona).) They have not done so.

"In invoking diversity jurisdiction, the plaintiff's complaint must specifically allege each party's citizenship and these allegations must show that the plaintiff and defendant are citizens of different states." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804-05 (5th Cir. 1991) (quoting *Powell v. Abney*, 83 F.R.D. 482, 487 (S.D. Tex. 1979)); *see also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) ("For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege the citizenship of the parties." (quotations omitted, emphasis added)). The London Property Insurer's allegation that the Names "are citizens of various foreign states and of various U.S. States" is insufficient to establish diversity jurisdiction as a matter of law. *See Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259-60 (5th Cir. 1988). Accordingly, their "[f]ailure adequately to allege the basis for diversity jurisdiction mandates dismissal." *Howery*, 243 F.3d at 919.[7]

**B.     The Court Should Abstain from Entertaining the London
Property Insurers' Declaratory Judgment Claim**

Even if the Court were to conclude that it has subject matter jurisdiction, the Court should nevertheless defer to the Arizona Action and decline to entertain the London Property

---

[7]BFI notes that even if the London Property Insurers were able to show that none of the Names is a citizen of Arizona or Delaware, diversity jurisdiction would still be lacking. By naming BFI as the only defendant in their declaratory judgment claim, the London Property Insurers have failed to join necessary and indispensable parties to this action; namely, the individual subsidiaries of BFI who owned or controlled the damaged property at issue and who are insureds under the London policies. When those necessary and indispensable parties are joined in this action, any name who is a citizen of at least Nevada, Ohio, Maryland, New York, and Minnesota would not be diverse. (*See* Ex. 7.) If necessary, the London Property Insurers' failure to join necessary and indispensable parties will be the subject of a subsequent motion if and when they ever correct their deficient jurisdictional allegations. *See* Fed. R. Civ. P. 12(h)(2).

Insurers' declaratory judgment claim.  By its terms, application of the FDJA is not mandatory.[8]

*Brillhart v. Excess Ins. Co. of Am.*, 62 S. Ct. 1173, 1175 (1942).  Rather, the decision to grant a

declaratory judgment rests in the sound discretion of the district court.  *See Granite State Ins. Co.*

*v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992), *cert. dism'd*, 113 S. Ct. 1836 (1993); *Torch, Inc. v.*

*LeBlanc*, 947 F.2d 193 (5th Cir. 1991).  In exercising that discretion, the district court must

balance the purposes of the FDJA and the factors relevant to the abstention doctrine.  *Travelers*

*Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).  Those factors

include, but are not limited to, (1) whether there is a pending state action in which all of the

matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of

a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing

the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in

time or to change forums exist; (5) whether the federal court is a convenient forum for the parties

and witnesses; and (6) whether retaining the lawsuit in federal court would serve the purposes of

judicial economy.[9]  In this case, these factors overwhelmingly support dismissal.

> 1.     There is a Pending State Action in Which All
>        Matters in Controversy May be Fully Litigated

As noted above, the Arizona Action is currently pending in the District of Arizona.  The

Arizona Action includes all of the parties and all of the insurance policies at issue in this action.

---

[8]The FDJA provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, **_may_** declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201 (emphasis added).

[9]Although broad, a district court's discretion it is not unfettered.  A district court may not dismiss claims for declaratory judgment relief "on the basis of whim or personal disinclination." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989) (quoting *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981)).  Accordingly, the district court must address and balance the relevant factors on the record. *Louisiana Farm Bureau*, 996 F.2d at 778.

In fact, as it is currently postured with BFI's claims for money damages based on the London Property Insurers' breach of contract and claims handling practices, the Arizona Action will resolve more matters in controversy. There is simply no argument that the issues raised by the London Property Insurers in their FDJA claim cannot be litigated fully the Arizona Action.

2.      The London Property Insurers Filed Suit in Anticipation of BFI's Suit in Arizona

As noted above, by February 27, 2002, the London Property Insurers knew that BFI intended to file suit against them. In fact, they knew precisely where and when (to the hour) that the suit would be filed. Notwithstanding their knowledge of the filing – and notwithstanding the fact that one of their co-insurers had agreed to the filing – the London Property Insurers ran to this Court and initiated this proceeding on the very same day that BFI filed its amended complaint in Arizona. It is beyond dispute that the London Property Insurers filed this lawsuit in anticipation of BFI's filing in Arizona.

3.      The London Property Insurers Engaged in Forum Shopping

In their Complaint, the London Property Insurers make the disingenuous statement that "[a]s a result of BFI's termination of the Standstill Agreement, [their] *only* recourse is to seek this Court's assistance in resolving the parties' rights and obligations under the London Policies." (Complaint, ¶ 46 (emphasis added).) That statement is false. The other recourse available to the London Property Insurers (and the only one that was procedurally proper) was to defend the claims that they knew would be brought by BFI in Arizona. However, due to some subjective belief that there is a tactical advantage to litigating in federal court in Houston, the London Property Insurers raced to this Court with the hope that they might secure a different forum. As noted by the Fifth Circuit, "[a]nticipatory suits are disfavored because they are an aspect of forum-shopping." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983). The Court should not reward their conduct.

Indeed, the London Property Insurers' forum shopping is particularly distasteful in light of the "service of suit" clause contained in each of their policies, which provides:

> It is agreed that in the event of failure of Underwriters hereon, to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. . . . It is further agreed that . . . in any suit instituted against any one of them upon this Contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

(*See* Ex. 13.)  At least one Texas court has held, as a matter of first impression, that this language precludes the type of gamesmanship played by the London Property Insurers herein. *See American Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337 (Tex. App.—Dallas 2001, pet. filed)

In *Triton*, a policyholder sued its insurer in Texas seeking coverage on a judgment rendered in a malicious prosecution suit.  Three days later, the insurer filed a separate suit in California seeking a declaration that its policy did not provide coverage for the punitive damages awarded in the underlying suit.  Thereafter, the insured filed an application in Texas for an anti-suit injunction seeking to enjoin the insurer from pursuing the California lawsuit.  In granting the injunction, the trial court found that the insurer "was prevented from pursuing the California Lawsuit by the 'service of suit' endorsement to the policy." *Id*. at 340.[10]  The trial court held that

---

[10]The endorsement at issue in *Triton* provided:

> [I]t is hereby understood and agreed that in the event of failure of [AISLIC] (herein called "the company"), to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. . . . It is further agreed that . . . in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

*Triton*, 52 S.W.3d 340.

the insurer's promise in the "service of suit" endorsement to submit to the jurisdiction of a court selected by the insured and to "abide by the final decision of such court" precluded the insurer from asserting its claims in a separate proceeding when the insured had initiated an action for coverage under the policy. *Id*. at 340-41. Thus, like the insurer in *Triton*, the London Property Insurers should not be allowed to forum shop their way out of the "service of suit" clause by asserting claims for declaratory relief in a separate proceeding when BFI initiated suit in Arizona to recover policy benefits.

    4.    <u>It is Inequitable to Allow the London Property Insurers to Change Forums</u>

Federal courts have consistently held that the fact that a declaratory judgment action is filed in anticipation of a lawsuit by the natural plaintiff is an "equitable consideration which the district court [is] entitled to take into account." *Amerada Petrol. Corp*. v. *Marshall*, 381 F.2d 661, 663 (5th Cir. 1967). This is particularly true in the case of insurers attempting to deprive insureds of their traditional choice of forum. *See, e.g., Mission*, 706 F.2d at 602; *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995); *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991); *Travelers Indem. Co. v. Waffle House*, No. 3:97-CV-1239-H, 1997 WL 560773 (N.D. Tex. Aug. 29, 1997); *John Deere Ins. Co. v. Smith Lighterage Co.*, 948 F. Supp. 947, 950 (W.D. Wash. 1996); *National Union Fire Ins. Co. v. Freeport-McMoRAN, Inc.*, 767 F. Supp. 568, 573 (D. Del. 1991); *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 430 (M.D. N.C. 1988).

Indeed, even where a declaratory judgment plaintiff is the first to file, federal courts do not hesitate to grant dismissals where, as in this case, the suit was filed in anticipation of litigation by the natural plaintiff. This Court's opinion in *Service Corp., Int'l v. Loewen Group, Inc.*, 1997-1 Trade Cas. (CCH) ¶ 71,688, 1996 WL 756808 (S.D. Tex. Nov. 29 1996), is instructive. In *Service Corp.*, the plaintiff, SCI, attempted to take over the defendant, Loewen.

After Loewen's board of directors rejected SCI's proposed stock merger, Loewen allegedly began making public statements suggesting that the merger would violate the antitrust laws.  On October 1, 1996, SCI's board of directors approved a tender offer for all outstanding Loewen stock.  On the same day, SCI filed suit in the Southern District of Texas seeking, *inter alia*, a declaration that Loewen had no standing under the antitrust laws to block SCI's attempted takeover.  On October 10, 1996, Loewen filed an antitrust action in the Eastern District of New York to enjoin SCI's takeover.

Loewen filed a motion to dismiss the Texas action.  Noting that it could "defer to the later-filed court when 'compelling circumstances' are present," this Court dismissed the first-filed Texas action.  *Id*. at *2.  In Court stated:

> One such compelling circumstance is when the suit was brought in one forum in anticipation of the opposing party bring suit in another, less favorable forum.  After considering the allegations of the parties in the two lawsuits and the circumstances under which they were brought, this Court finds that SCI's suit in this Court was filed in anticipation of Loewen filing its antitrust suit in New York.

*Id*. (citations omitted); *see also 909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990) (dismissing first-filed declaratory judgment suit where plaintiff had received letter from the defendant advising of its intent to pursue available remedies).

In this case, the reasons for dismissal of the London Property Insurers' claim are even more compelling than those addressed in *Service Corp*.  As in *Mission* and the other cases cited above, this Court should not condone the London Property Insurers' race to the courthouse and penalize BFI for informing them of its intentions to file suit.

5.      Arizona is a More Convenient Forum for the Parties and Witnesses

As noted above, BFI is now based in Arizona.  Although Houston was certainly a logical

venue at the time of the Standstill Agreement in 1998 when BFI was still based here, since the

merger with Allied Waste Industries, Inc., the BFI corporate headquarters on Eldridge Parkway

has been sold, and the management of BFI has been transferred to Arizona.  Accordingly,

substantially all of the current employees with responsibility for managing BFI environmental

matters are based there.   Moreover, over the past 2 1/2 years, literally thousands of BFI

documents that were formerly maintained in Houston have been transferred to Arizona.  Those

documents include real estate files showing the ownership and leasehold interests in the sites at

issue; active litigation files relating to environmental property damage; accounting files showing

the amounts spent to remedy property damage; and engineering files showing the activities

conducted to remedy property damage.   Under these circumstances, litigating this dispute in

Arizona is plainly more convenient.[11]

6.      Retaining this Lawsuit Will Not Serve the Purposes of Judicial Economy

Retaining this action in the Southern District of Texas will be a waste of judicial

resources.  In due course, the court in the Arizona Action will be presented with a motion to

remand based upon, *inter alia*, the lack of subject matter jurisdiction under the FSIA.   In the

event that such motion is granted, the case will return to the Superior Court of Maricopa County.

Nevertheless, until the remand issue is decided, there is simply no reason for the this dispute to

be pending in two separate district courts.   Accordingly, judicial economy will be served by

dismissal of this action.

---

[11]Because they are based primarily in the United Kingdom, the London Property Insurers
cannot credibly claim that it will be more burdensome for them to litigate in Arizona as opposed
to Texas.

## CONCLUSION

For the foregoing reasons, it is plain that the Court should dismiss this action.

WHEREFORE, Browning-Ferris Industries, Inc. respectfully requests that the Court dismiss this action and grant it all other relief to which it is justly entitled.

Respectfully submitted,

By: _____

David J. Beck
State Bar No. 00000070
Federal I.D. No. 919
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720
Attorney-in-Charge for Defendant
Browning-Ferris Industries, Inc.

OF COUNSEL:

BECK, REDDEN & SECREST, L.L.P.
David W. Jones
State Bar No. 00790980
Fed. I.D. No. 18206
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure by hand delivery on the day of April ___, 2002.

_____
David W. Jones

The Exhibit(s) May

Be Viewed in the

Office of the Clerk