IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FORTIS INSURANCE LTD., et al., | § § | |
| Plaintiffs, | § § | |
| VS. | § § | C.A. NO. H-02-1226 |
| BROWNING-FERRIS INDUSTRIES, INC., | § § | JURY DEMANDED |
| Defendant. | § § | |

## BFI DEFENDANTS' SUPPLEMENTAL BRIEF
## IN SUPPORT OF MOTIONS TO DISMISS

Defendants Browning-Ferris Industries, Inc., *et al.* (collectively, "BFI"), file this supplemental brief in support of the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 7.) and the Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction (Dkt. No. 15). The purpose of this supplemental brief is to inform the Court of a ruling by the U.S. District Court for the District of Arizona involving the same parties and bearing on issues raised in BFI's motions to dismiss. BFI respectfully shows as follows:

In its earlier filings, BFI set forth the procedural history of this case, including:

- On February 27, 2002, BFI provided notice to the plaintiff London Insurers that it intended to join them in a pending insurance coverage action in the Superior Court of Maricopa County, Arizona upon the termination of the parties' Standstill Agreement in 30 days.

- On March 29, 2002, BFI filed its amended complaint in Maricopa County joining the London Insurers as defendants, identifying sites at which insured property damage occurred, and asserting claims for, *inter alia*, money damages arising from the London Insurers' breach of contract and claims handling practices.

- On the same day, in anticipation of BFI's filing in Arizona, the London Insurers initiated this action seeking a declaratory judgment on unspecified claims by unspecified insureds at unspecified sites. (*See* Dkt. No. 1.)



113 00136/182952 01

- On April 9, 2002, the London Insurers filed an appearance in the Superior Court of Maricopa County. Immediately thereafter, Icarom, P.L.C. (one of the plaintiffs herein) removed the Maricopa County action to the District of Arizona claiming (incorrectly) that it is an "instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603, *et seq.*

- On April 18, 2002, BFI filed a motion to dismiss this action for lack of subject matter jurisdiction. (*See* Dkt. No. 7.) In its motion, BFI argued that there is no jurisdiction under the FSIA and no diversity jurisdiction. BFI also argued that the Court should abstain from entertaining the London Insurers' anticipatory declaratory judgment claim in favor of the Arizona action.[1]

- On the same day, the London Insurers filed a motion in the District of Arizona to transfer the case to this District.

- On May 6, 2002, BFI filed a motion to remand the Arizona action back to the Superior Court of Maricopa County.

- On May 8, 2002, the London Insurers filed their opposition to BFI's motion to dismiss this action. (*See* Dkt. No. 12.) In their opposition, the London Insurers argued, *inter alia*, that this Court has subject matter jurisdiction because Icarom, P.L.C. is an "instrumentality of a foreign state" within the meaning of the FSIA. The London Insurers also argued that this Court should not abstain from hearing their declaratory judgment claim because litigation in this District is convenient and will promote judicial economy.

The issues raised in BFI's motions to dismiss herein were virtual mirror images of the issues raised in BFI's motion to remand and the London Insurers' motion to transfer filed in the District of Arizona. On June 18, 2002, the District of Arizona ruled on those issues in favor of BFI. Specifically, in the Order from Chambers attached hereto as Ex. A, the Judge John W. Sedwick ruled that Icarom, P.L.C. is not "an instrumentality of a foreign state" within the

---

[1] On May 7, 2002, the plaintiffs filed their First Amended Complaint in which they added certain subsidiaries of Browning-Ferris Industries, Inc. as defendants. The plaintiffs also added Lexington Insurance Company as a defendant. Because the First Amended Complaint contained no substantive changes, on May 31, 2002, BFI filed a Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction (Dkt. No. 15) incorporating the arguments from its original motion to dismiss.

meaning of the FSIA. Accordingly, Judge Sedwick granted BFI's motion to remand. Judge Sedwick also denied the London Insurers' motion to transfer as moot.

The ruling from the District of Arizona significantly impacts the consideration of BFI's motions to dismiss herein. Setting aside the fact that Judge Sedwick flatly rejected the London Insurers' principal argument in support of subject matter jurisdiction, the ruling offers compelling support for this Court to abstain from hearing the London Insurers declaratory judgment claim. Specifically, the remand ensures that the dispute between BFI and the London Insurers will be litigated in the Superior Court of Maricopa County. Under these circumstances, where the London Insurers filed this suit in admitted anticipation of the Maricopa County action,[2] there is simply no justification for litigating the identical issues involving the identical parties in the Southern District of Texas. To do so would be a tremendous waste of judicial resources.

WHEREFORE, defendants Browning-Ferris Industries, Inc.; BFI Waste Systems of North America, Inc.; Browning-Ferris Industries Chemical Services, Inc.; Browning-Ferris Industries of Ohio, Inc.; Browning-Ferris, Inc. (MD); Browning-Ferris Industries of New York, Inc.; BFI Waste Systems of New Jersey, Inc.; CECOS International, Inc.; and Woodlake Sanitary Services, Inc. respectfully request that the Court dismiss this action and grant them all other relief to which they are justly entitled.

---

[2]Significantly bearing on the anticipatory nature of the London Insurers' suit, Judge Sedwick stated, "*Knowing that BFI would file an amended complaint*, London Insurers filed a separate lawsuit against BFI in the U.S. District Court for the Southern District of Texas on the very same day." (Ex. A, at 4 (emphasis added).)

Respectfully submitted,

By: _____
David J. Beck
State Bar No. 00000070
Federal I.D. No. 919
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720

Attorney-in-Charge for Defendants
Browning-Ferris Industries, Inc., *et al.*

OF COUNSEL:

BECK, REDDEN & SECREST, L.L.P.
    David W. Jones
    State Bar No. 00790980
    Fed. I.D. No. 18206
1221 McKinney, Suite 4500
Houston, Texas 77010
Telephone: 713/951-3700
Telecopier: 713/951-3720

## CERTIFICATE OF SERVICE

    This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on the day of June 19, 2002.

_____
David W. Jones

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## OFFICE OF THE CLERK

**RICHARD H. WEARE**
DISTRICT COURT EXECUTIVE / CLERK OF COURT
SANDRA DAY O'CONNOR U S COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

Visit our website at www.azd.uscourts.gov

**RONNIE HONEY**
CHIEF DEPUTY CLERK
SANDRA DAY O'CONNOR U. S. COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

**WILLIAM M. MCCOOL**
CHIEF DEPUTY CLERK
EVO A DECONCINI U.S COURTHOUSE
405 W CONGRESS, SUITE 1500
TUCSON, ARIZONA 85701-5010

June 18, 2002

Michael Jeanes, Clerk of Court
Maricopa County Superior Court
201 West Jefferson St.
Phoenix, AZ 85003-2205

**ATTN:** Supervisor, Lower Level File Room

**RE:** **REMAND TO MARICOPA COUNTY SUPERIOR COURT**

District Court Case Number: **CIV 02-643 PHX JWS**

Superior Court Case Number: **CV 2001-021047**

Dear Clerk of Court:

Enclosed is a certified copy of the Order entered in this Court on **June 18, 2002,** remanding the above case to Maricopa County Superior Court for the State of Arizona.

Sincerely,

RICHARD H. WEARE, DCE/CLERK OF COURT

L. Dixon, Deputy Clerk

Enclosure
cc: all counsel/file
    Judicial Administrator

*The staff of the Clerk's Office ensures the effective, efficient and professional delivery of clerical and administrative services, while fostering a customer-friendly and employee-friendly environment.*

**EXHIBIT**

A

FILED ___ LODGED
RECEIVED ___ COPY
JUN 1 8 2002
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

BROWNING-FERRIS INDUSTRIES, INC., et al.,

    Plaintiffs,

vs.

LEXINGTON INSURANCE COMPANY, et al.,

    Defendants.

CIV 02-643 PHX (JWS)

**ORDER FROM CHAMBERS**

[Re: Motions at Docket Nos. 3 and 11]

## I. MOTIONS PRESENTED

At docket 11, plaintiff Browning Ferris Industries, Inc., et al. ("BFI") presents a motion to remand this action to the Superior Court of Arizona. Defendant Icarom, P.L.C. ("Icarom"), one of the London Insurers named as a defendant in this action, opposes the motion. Also, at docket 3, defendants Underwriters of London Insurers and Market Insurers (collectively "London Insurers") move to transfer this case to the Southern District of Texas. BFI opposes that motion. The issues have been fully briefed. Neither party has requested oral argument, and it would not be of assistance to the court.

21

## II. BACKGROUND

### A. Background Concerning Icarom[1]

Icarom is the successor to the Insurance Corporation of Ireland Ltd. ("ICI"). Until 1985, ICI's shares were owned by Allied Irish Banks, P.L.C. ("AIB"). In 1985, the Irish Parliament passed the Insurance Act of 1985. That act authorizes the formation of a holding company, Sealuchais Arachais Teoranta ("SAT"), which then acquired the shares of ICI. The shareholders of SAT hold legal title to stock in ICI but hold those shares in trust for the benefit of the Irish Minister for Industry, Trade, Commerce and Tourism ("Minister"). Shortly after SAT acquired ICI's shares, ICI was placed in "administration" - a proceeding similar to bankruptcy - and the Minister appointed an administrator to manage ICI. Five years later, in 1990, ICI sold all of its business in the Republic of Ireland and Northern Ireland to a third company, Assurances Generales de France, and changed its name to Icarom. Icarom continues to administer and run-off liability on all ICI policies.

### B. Factual Background of the Case

From August 1975 through October 1994, BFI purchased insurance first from Lexington Insurance Company ("Lexington") and then from London Insurers, that covered "all risks of direct physical loss or damage." The policy issued by Lexington was effective from August 1975 through August 1978. Thereafter, twelve (12) separate

---

[1]These facts are stated in BFI's motion and are taken from *Murphy Oil USA, Inc. v. U.S. Fid. & Guar. Co.*, 1992 WL 465701, at *5 (W.D. Ark., Dec. 21, 1992).

policies with London Insurers provided continuous coverage from 1976 through 1994.[2] The terms of the policies are not at issue in these motions and need not be discussed here.

This case concerns insurance coverage for environmental clean up costs. BFI sustained losses at various sites throughout the country when it had to clean up environmental contamination. BFI then sought to recover the costs expended in completing the cleanup by filing claims under the policies issued by Lexington and London Insurers. Lexington and London Insurers, however, refused to pay on the ground that the policies did not cover such losses.

## C. Procedural History

Unable to recover any payments from London or Lexington, BFI filed suit in Texas state court in 1998. At the time, BFI was based in Houston, Texas. Before the case proceeded very far, London Insurers and BFI commenced settlement negotiations in an attempt to resolve the matter. BFI agreed to dismiss its claims against London Insurers without prejudice, and the parties entered into a Standstill agreement in February 2000.[3] BFI then commenced similar discussions with Lexington.

---

[2]The policies that BFI held with London were different than policies that are typically seen with U.S. insurance companies. London explains that "in a London policy, multiple insurance companies and 'Syndicates' of Lloyd's underwriters may agree to insure varying percentages of the risk." Doc. 11, at 3. In this case, it appears that nearly 100 different companies subscribed to the policy. Doc. 11, at 3.

[3]The Standstill Agreement contains a termination provision that states:

BFI and LONDON FIRST-PARTY INSURERS, for themselves and their successors and assigns, each separately agrees that any party hereto may terminate this AGREEMENT for any reason by giving written notice as provided

By 2001, settlement discussions with Lexington had fallen apart. Now located in Arizona, BFI brought suit against Lexington in Maricopa County Superior Court. Then, on February 27, 2002,[4] BFI advised London Insurers that it was terminating their Standstill agreement. BFI phoned counsel for Lexington and requested its consent to the filing of an amended complaint that adds London Insurers as a defendant. Lexington agreed to the amended complaint. Accordingly, on March 29, 2002, BFI filed an amended complaint in Maricopa County Superior Court naming London Insurers as a defendant.

Knowing that BFI would file an amended complaint, London Insurers filed a separate lawsuit against BFI in the U.S. District Court for the Southern District of Texas on the very same day, March 29, 2002. That suit seeks declaratory judgment, under the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201, that the policy does not provide coverage for unspecified claims by unspecified insureds at unspecified sites. On April 9, 2002, London Insurers filed an appearance in the case in Arizona. Immediately thereafter, Icarom removed the case to federal court in the District of Arizona, arguing that it is an "instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603.[5]

---

herein that it wishes to terminate the AGREEMENT.

[4]London's motion states the date as February 27, 2001. It is clear, however, that London meant to state the date as February 27, **2002**.

[5]Icarom asserts no other basis for removal jurisdiction. Therefore, this court does not consider whether there is federal question jurisdiction or diversity jurisdiction.

-4-

## III. STANDARD OF REVIEW

A defendant removing a case to federal court has the burden of establishing that the removal is proper.[6] A suit may be removed if removal jurisdiction pursuant to 28 U.S.C. § 1441 exists and the procedures for removal at 28 U.S.C. § 1446 are followed. Nevertheless, courts must strictly construe the removal statutes against removal and must reject removal jurisdiction if there is any doubt as to whether the removal is proper.[7] If it appears the court lacks jurisdiction, the case "shall be remanded" to state court.[8]

## IV. DISCUSSION

Icarom removed the instant case from Arizona state court to U.S. District Court pursuant to 28 U.S.C. § 1441. Section 1441(d) states, in pertinent part, that "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state."[9] Icarom argues that it is an instrumentality of the Irish Republic and, therefore, it properly removed the case to federal court. BFI, however, seeks remand on the ground that Icarom is not an "instrumentality of a foreign state" within the meaning of FSIA.

---

[6] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

[7] *Id.*

[8] 28 U.S.C. § 1447(c).

[9] 28 U.S.C. § 1441(d).

A "foreign state" for purposes of § 1441(d) includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."[10] Section 1603(b) in turn defines an "agency or instrumentality of a foreign state" as any entity:

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

The arguments in this case center around part two. That is, BFI argues that Icarom is not a "foreign state" because it is neither an "organ of a foreign state" nor majority owned by a foreign state. Icarom, on the other hand, argues that it is both an organ of a foreign state and that the Republic of Ireland is a majority shareholder/owner. For the reasons discussed below, this court concludes that Icarom has not shown it is an organ of a foreign state nor majority owned by a foreign state and, therefore, was not entitled to remove under section 1441(d).

## A. "Majority Shares" Argument

BFI is correct that Icarom is not an instrumentality because of majority ownership by a "foreign state or political subdivision thereof."[11] In the most recent case in this circuit, *EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*,[12] the Ninth Circuit concluded that ICI was not an instrumentality of a foreign state because "a

---

[10] 28 U.S.C. § 1603(a).

[11] 28 U.S.C. § 1603(b)(2).

[12] 257 F.3d 992 (9th Cir. 2001).

majority owned subsidiary of an 'instrumentality of a foreign state' is not itself an 'instrumentality' under FSIA."[13] This holding was consistent with prior decisions in this circuit.[14] Icarom relies on a variety of decisions that found ICI to have majority ownership interests and thus be instrumentalities.[15] The problem is that those decisions are all from outside this circuit. This court is bound to apply the law as it has been determined by the Ninth Circuit.

### B. "Organ of a Foreign State" Argument

The only basis upon which Icarom might constitute an instrumentality of a foreign state would be as an "organ of a foreign state." An entity is an "organ of a foreign state" if it engages in a public activity on behalf of the government. Whether this is the case is determined by evaluating a number of factors including: (1) the circumstances surrounding the entity's creation, (2) the purpose of the entity's activities, (3) the entity's independence from the government, (4) the level of financial support it receives from the government, (5) the entity's employment policies, (6) and its obligations and privileges under state law.[16] Examples of organs of foreign states may include national

---

[13]*Id.* at 997.

[14]*See Patrickson v. Dole Food Co., Inc.*, 251 F.3d 795, 806 (9th Cir. 2001); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1462 (9th Cir. 1995), *cert den.* 116 S.Ct. 187..

[15]Doc. 18. at 12 n.11 (citing Second, Third, Fifth, and Seventh Circuit cases concluding that the plain language of the FSIA draws no distinction between direct and indirect ownership).

[16]*See Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 654-55 (9th Cir. 1996) ("*CMSM*").

banks, state universities, and public television networks.[17] Ultimately, however, the determination is one that is made case-by-case.[18]

Icarom argues that it is an organ of the Republic of Ireland because it was acquired by SAT for a public purpose, its acquisition was enabled by an act of the Irish Parliament, an administrator appointed by the High Court controls day-to-day operations and reports to the government, Icarom has received funding arranged by the government, and a government agency controls the selection of upper level personnel. Because Icarom has the burden of showing removal jurisdiction, Icarom must demonstrate that evaluation of these factors yields the conclusion that it is an organ of the Republic of Ireland. Having reviewed the relevant law and the evidence presented by Icarom, this court concludes that Icarom is not an organ of the Irish government and, therefore, was not entitled to remove pursuant to 28 U.S.C. § 1441(d).

The problem with Icarom's argument is that the evidence it provides really shows that it is an ordinary insurance company which has had financial difficulties. The facts show that Icarom was acquired by SAT, a holding company created by the Irish government but owned by private individuals, that it received funding from the Irish Insurance Compensation Fund ("ICF") to cover its liabilities, it was placed under administration because it was in jeopardy of financial collapse, and because of the

---

[17]*Patrickson*, 251 F.3d at 808.

[18]*See EOTT*, 257 F.3d at 997.

administration, the government is involved in approval of certain aspects of the business.

Icarom's situation is substantially similar to that of the corporation at issue in *Patrickson*. In *Patrickson*, the court found that where the government's control of the corporation was no different from that of a majority shareholder, the corporation was not an organ of a foreign government.[19] In that case, the government had the right to appoint directors and officers and authorize changes in capital structure of the company. Nevertheless, it was not run by a government appointee, the employees were not civil servants, the company could still sue or be sued, and it did not exercise regulatory authority.[20] Similarly, here, although an administrator was appointed by the Minister to oversee day-to-day operations and report back to the Minister and the administrator, in turn, controls the selection of the general manager, Icarom does not exercise any regulatory or other governmental power, nor are any of its employees public servants. Further, there is no evidence suggesting Icarom cannot sue or be sued. *Patrickson* virtually compels this court to find that Icarom is not an organ of the Irish government.

In those cases where a court has found corporations to be organs of foreign states, the entities were linked much more closely with the government than Icarom is linked to the Irish government. In *Gates*, for example, the court found that a regulatory

---

[19] 251 F.3d at 808.

[20] *Id.*

board that exercised powers delegated by the government was an organ of the government.[21] Here, the fact that SAT acquired ICI to avoid the repercussions of ICI's imminent financial collapse does not mean that Icarom is the equivalent of the regulatory board involved in *Gates*. The contrast with the facts in *CMSM* is also telling. In *CMSM*, the court found that an oil refinery was an organ of the government.[22] However, the oil refiner was not acting merely as a corporation in which the government held shares; the government actually controlled the appointment of its high-level employees, the employees who worked for the refiner were public servants, and the government was the exclusive source refining and distributing, and the refiner was created by the Mexican Constitution.[23] Icarom has none of these attributes.

Icarom's reliance on cases that found Icarom/ICI or another corporation was an instrumentality does not change this result. Most notably, these cases are all from outside the circuit. Many of the cases did not evaluate the entity's "organ" status.[24] In those cases that did discuss organ status, the ownership of the entity was significant and, therefore, the court relied on law that is contrary to the law of this circuit.[25] Others

---

[21]54 F.3d 1457.

[22]89 F.2d at 655.

[23]*Id.*

[24]*In re Texas Eastern*, 15 F.3d 1230 (3rd Cir. 1994); *Bd. of Trustees of Univ. of Illinois v. ICI*, 969 F.2d 329 (7th Cir. 1992); *Pittston Co. v. Allianz Ins. Co*, 795 F. Supp. 678 (D.N.J. 1992); *Liberty Mut. Ins. Co. v. ICI*, 693 F. Supp. 340 (W.D. Pa. 1988).

[25]*Consumers Energy Co. v. Certain Underwriters at Lloyd's London*, 45 F. Supp.2d 600, 603 (E.D. Mich. 1999) (stating "[a]s this court held in the context of another lawsuit, Icarom is a foreign state . . . because [it] is 100% owned by the Republic of Ireland"); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp.2d 870, 880 (E.D. Mich. 1999) (same).

of the cases are distinguishable for other reasons. In *Kelly v. Syria Shell Petroleum Dev. B.V.*,[26] for example, the Fifth Circuit held that the company *was* an organ of the Syrian government because it was established under Syrian law, operated as a non-profit, government officials served on the board, and the Syrian government owned it in its entirety.[27] None of the cases Icarom cites undermine the application of *Patrickson's* teaching here.

Icarom's reliance on *EOTT* is misplaced. Icarom argues that the court in *EOTT* suggested that if the evidence turned out as Icarom had argued, it would qualify as an organ.[28] This court disagrees with Icarom's characterization of the decision. Icarom is correct that *EOTT* remanded the case to the district court to determine whether it was an "organ." Nevertheless, *EOTT* merely spelled out the factors weighing in favor of organ status and those against. In favor included that the acquisition was not for profit by the government and that the government does not obtain profits from Icarom's operations.[29] Against organ status, however, were the facts that no evidence was available that employees were public servants, Icarom was still subject to suit in Ireland, and that it was not controlled by the government.[30] Having taken a more thorough look

---

[26]213 F.3d 841 (5th Cir. 2000).

[27]*Id.* at 847-48.

[28]Doc. 18, at 5.

[29]*EOTT*, 271 F.3d at 998.

[30]*Id.* at 999.

-11-

at the cases than the court in *EOTT* could, this court concludes that the factors weigh against organ status.

Finally, Icarom incorrectly dismisses the relevance of the *Murphy Oil* and *Mobil Corp. v. Abeille General Ins. Co.*[31] cases. Icarom argues that those cases do not support remand because the cases did not consider organ status. This is not entirely true. Both cases did consider "organ" status and ultimately concluded that ICI was not an organ of the Irish government because there was no evidence that it had been acquired for a public purpose.[32] Thus, even if those cases did not apply the correct standard, as Icarom suggests, the conclusion concerning organ status and public purpose is still relevant to the outcome here.[33]

It is unnecessary to address BFI's other arguments.

---

[31] 1990 WL 504828 (S.D. Tex., Nov. 6, 1990).

[32] *Murphy Oil*, 1992 WL 465701, at *5; *Mobil Corp.* 1990 WL 504828, at *2.

[33] Icarom suggests that the courts incorrectly required that it show both ownership and organ status. Doc. 18, at 13. It is true that the court stated that "[e]ven if the Irish government has an ownership interest in ICI this courts [sic] jurisdiction is not automatic. 'Two more precise indices of an entity's status as a state agency or instrumentality focus on the degree to which the entity discharges a governmental function, and the extent of state control over the entities [sic] operations.'" *Mobil*, 1990 WL 504828, at *2 (quoting *Edlow Intern. Co v. Nuklearna Elektrarna Krsko*, 441 F. Supp. 827, 832 (D.D.C. 1977)). However, the outcome in that case did not depend on the court finding ownership, but on the lack of governmental function and state control.

## V. CONCLUSION

For the reasons stated above, BFI's motion at docket 11 to remand is **GRANTED**. Accordingly, London's motion to transfer the case to the Southern District of Texas at docket 3 is **DENIED** as moot.

This case is **REMANDED** to the Superior Court of Arizona, Maricopa County.

DATED at Anchorage, Alaska, this 12th day of June 2002.

JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE